UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2007 NOV 13  P 3: 02

CLERK C. Robinson
SOUTHERN DIST. OF GA.

BRENDA PRESLEY                           *
    Individually, and as the Administratrix of   *
    the Estate of Antonio Presley, decedent,    *
                            *
              Plaintiff,                  *
                            *
v.                                       *
                            *
CITY OF BLACKSHEAR, BLACKSHEAR           *
POLICE DEPARTMENT, FORMER CHIEF OF       *
POLICE JAMES MOCK, Individually and in his  *
Official Capacity as the former Chief of Police of  *
the City of Blackshear, LT. GEORGE SMILEY,  *
Individually and in his Official Capacity for the  *
Blackshear Police Department, OFFICER    *
GREGORY K. EVANS, Individually and in his  *
Official Capacity for the Blackshear Police  *
Department, OFFICER CHRISTOPHER W.       *
CARTER, Individually and in his Official Capacity  *
for the Blackshear Police Department, PIERCE  *
COUNTY, PIERCE COUNTY SHERIFF'S          *
DEPARTMENT, SHERIFF RICHARD KING,        *
Individually and in his Official Capacity as Sheriff  *
of Pierce County Sheriff's Department, DET. JOHN*
RAMSEY BENNETT, Individually and in his  *
Official Capacity for the Pierce County Sheriff's  *
Department, RAYMOND LEE HUNT, Individually *
and in his Official Capacity for the Pierce County  *
Jail, Pierce County Sheriff's Department,  *
DAPHNE G. VAN, Individually and in her   *
Official Capacity for the Pierce County Jail,  *
Pierce County Sheriff's Department, PIERCE  *
COUNTY EMERGENCY MEDICAL SERVICES,       *
DIRECTOR KENNETH L. JUSTICE OF THE       *
PIERCE COUNTY EMERGENCY MEDICAL          *
DEPARTMENT, Individually and in his Official  *
Capacity as the Director of the Pierce County  *
Emergency Medical Services, PARAMEDIC    *

Civil Action File
No. **CV507 - 94**

DAVID FARRIOR, Individually and in his Official   *
Capacity  for the Pierce County Emergency       *
Medical Services, PARAMEDIC ALFRED KENT   *
DAVIS, Individually and in his Official Capacity   *
for the Pierce County Emergency Medical Services,  *
EMT-INTERMEDIATE LORNE ANDREAE,     *
Individually and in her Official Capacity for the   *
Pierce County Emergency Medical Services,     *
JOHN DOES 1-10, Individually and in the Official  *
Capacities for City of Blackshear, Blackshear    *
Police Department, Pierce County, Pierce County   *
Sheriff's Department, Pierce County Emergency   *
Medical Services,                           *
                                           *

       Defendants.                    *

## COMPLAINT FOR DAMAGES-JURY DEMAND

COMES NOW, Brenda Presley, Individually and as Administratix of the Estate of Antonio Presley, decedent[1], Plaintiff in the above-styled action, and files this her Complaint for Damages against the Defendants and states as follows:

## I. JURISDICTION

1.

This action is brought pursuant to 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and the laws of the State of Georgia. Jurisdiction is predicated upon 28 U.S.C. § 1343 and § 1367. The Court's supplemental jurisdiction is invoked for claims arising under Georgia law.

_____

[1]*Antonio Presley is hereinafter referred to in this Complaint as the Decedent.*

## II. PARTIES[2]

2.

Plaintiff is a resident of Blackshear, Pierce County, Georgia and is subject to the jurisdiction of this Court.

3.

Defendant City of Blackshear is a recognized legal entity subject to the jurisdiction and venue of this Court and may be served by delivering a copy of the Summons and Complaint to the Mayor of Blackshear, Tom Davis, Blackshear, Georgia.

4.

Defendant City of Blackshear allowed the Defendant former Chief of Police James Mock ("Defendant Mock") to establish all final authority in the employment, discipline, supervision, training, termination and retention of all personnel of the Defendant Blackshear Police Department. Therefore, City or Blackshear is liable for the acts and omissions of Defendant Mock.

5.

Defendant Blackshear Police Department is a recognized legal entity subject to the jurisdiction and venue of this Court and may be served by delivering a copy of the Summons and Complaint to the Mayor of Blackshear, Tom Davis, Blackshear, Georgia.

6.

Defendant Mock was at all times relevant to this Complaint the Chief of Police for the City of Blackshear and is named as a Defendant individually and in his official capacity as the Chief of

---

[2] *Pursuant to Local Rule 8(e), the home street address of the parties is redacted and the city and state is listed.*

Police for the City of Blackshear.

7.

Defendant Mock is subject to the jurisdiction and venue of this Court and may be served by delivering a copy of the Summons and Complaint to him personally or by leaving copies thereof at his residence in Blackshear, Georgia with some person of suitable age and discretion then residing therein.

8.

Defendant Lt. George Smiley ("Defendant Smiley") was at all times relevant to this Complaint head of the Patrol and Training Division of the Blackshear Police Department and is responsible for developing and implementing a training program for officers and is named as a Defendant individually and in his official capacity for the Blackshear Police Department.

9.

Defendant Smiley is subject to the jurisdiction and venue of this Court and may be served by delivering a copy of the Summons and Complaint to him personally or by leaving copies thereof at his residence in Blackshear, Georgia, with some person of suitable age and discretion then residing therein.

10.

Defendant Officer Gregory K. Evans ("Defendant Evans") was at all times relevant to this Complaint a police officer with the Blackshear Police Department and is named as a Defendant individually and in his official capacity for the Blackshear Police Department.

11.

Defendant Evans is subject to the jurisdiction and venue of this Court and may be served by

delivering a copy of the Summons and Complaint to him personally or by leaving copies thereof at his residence in Waycross, Georgia, with some person of suitable age and discretion then residing therein.

12.

Defendant Officer Christopher W. Carter ("Defendant Carter") was at all times relevant to this Complaint a police officer with the Blackshear Police Department and is named as a Defendant individually and in his official capacity for the Blackshear Police Department.

13.

Defendant Carter is subject to the jurisdiction and venue of this Court and may be served by delivering a copy of the Summons and Complaint to him personally or by leaving copies thereof at his residence in Blackshear, Georgia, with some person of suitable age and discretion then residing therein.

14.

Defendant Pierce County is a recognized legal entity subject to the jurisdiction and venue of this Court and may be served by delivering a copy of the Summons and Complaint to the Chairman of the Pierce County Board of Commissioner, James Dennison, Blackshear, Georgia.

15.

Defendant Pierce County allows the Pierce County Sheriff, Richard King, to establish all final authority in the medical care of jail inmates, employment, discipline, supervision, training, termination and retention of all Pierce County deputy sheriffs and jail personnel. Therefore, Pierce County is liable for the acts and omissions of Sheriff King.

16.

Defendant Pierce County Sheriff's Department is a recognized legal entity within the jurisdiction of this Court and may be served by delivering a copy of the Summons and Complaint to the chairman of the Pierce County Board of Commissioners, James Dennison, Blackshear, Georgia.

17.

Defendant Richard King was at all times relevant to this Complaint the Sheriff of Pierce County, Georgia and is named as a Defendant individually and in his official capacity as Sheriff of Pierce County.

18.

Defendant King is responsible for enforcing the laws and regulations of the State of Georgia and Pierce County. Defendant King is also responsible for the medical care of jail inmates, hiring, training, supervision, termination and conduct of all Pierce County Sheriff's Office and Jail employees.

19.

Defendant King is subject to the jurisdiction and venue of this Court. Defendant may be served by delivering a copy of the Summons and Complaint to him personally or by leaving copies thereof at his residence in Blackshear, Georgia, with some person of suitable age and discretion then residing therein.

20.

Defendant Det. John Ramsey Bennett ("Defendant Bennett") was at all times relevant to this Complaint employed by the Pierce County Sheriff's Department and is named as a Defendant

individually and in his official capacity as a detective/investigator for the Pierce County Sheriff's Department.

21.

Defendant Bennett is subject to the jurisdiction and venue of this Court and may be served by delivering a copy of the Summons and Complaint to him personally or by leaving copies thereof at his residence in Blackshear, Georgia, with some person of suitable age and discretion then residing therein.

22.

Defendant Jailer Raymond Lee Hunt ("Defendant Hunt") was at all times relevant to this Complaint employed by the Pierce County Jail, Pierce County Sheriff's Department and is named as a Defendant individually and in his official capacity as a jailer for the Pierce County Jail, Pierce County Sheriff's Department.

23.

Defendant Hunt is subject to the jurisdiction and venue of this Court and may be served by delivering a copy of the Summons and Complaint to him personally or by leaving copies thereof at his residence in Blackshear, Georgia, with some person of suitable age and discretion then residing therein.

24.

Defendant Jailer Daphne G. Van ("Defendant Van") was at all times relevant to this Complaint employed by the Pierce County Jail, Pierce County Sheriff's Department and is named as a Defendant individually and in official capacity as a jailer for the Pierce County Jail, Pierce County Sheriff's Department.

25.

Defendant Van is subject to the jurisdiction and venue of this Court and may be served by delivering a copy of the Summons and Complaint personally or by leaving copies thereof at residence in Blackshear, Georgia, with some person of suitable age and discretion then residing therein.

26.

Defendant Pierce County allows the Pierce County Emergency Medical Services Director, Kenneth L. Justice, to establish all final authority in the employment, discipline, supervision, training, termination and retention of all Pierce County emergency medical technicians. Therefore, Pierce County is liable for the acts and omissions of Director Justice.

27.

Defendant Pierce County Emergency Medical Services is a recognized legal entity within the jurisdiction of this Court and may be served by delivering a copy of the Summons and Complaint to the chairman of the Pierce County Board of Commissioners, James Dennison in Blackshear, Georgia.

28.

Defendant Kenneth L. Justice ("Defendant Justice") was at all times relevant to this Complaint the Director of Pierce County Emergency Medical Services, Pierce County, Georgia and is named as a Defendant individually and in his official capacity as Director of the Pierce County Emergency Medical Services.

29.

Defendant Justice is responsible for implementing the rules and regulations of the State of

Georgia and Pierce County for medical services. Defendant Justice is also responsible for the hiring, training, supervision, termination and conduct of all Pierce County emergency medical employees.

30.

Defendant Justice is subject to the jurisdiction and venue of this Court. Defendant Justice may be served by delivering a copy of the Summons and Complaint to him personally or by leaving copies thereof at his residence in Blackshear, Georgia, with some person of suitable age and discretion then residing therein.

31.

Defendant David Farrior ("Defendant Farrior") was at all times relevant to this Complaint a paramedic with the Pierce County Emergency Medical Services and is named as a Defendant individually and in his official capacity for the Pierce County Emergency Medical Services.

32.

Defendant Farrior is subject to the jurisdiction and venue of this Court and may be served by delivering a copy of the Summons and Complaint to him personally or by leaving copies thereof at his residence in Waycross, Georgia, with some person of suitable age and discretion then residing therein.

33.

Defendant Alfred Kent Davis ("Defendant Davis") was at all times relevant to this Complaint a paramedic with the Pierce County Emergency Medical Services and is named as a Defendant individually and in his official capacity for the Pierce County Emergency Medical Services.

34.

Defendant Davis is subject to the jurisdiction and venue of this Court and may be served by

delivering a copy of the Summons and Complaint to him personally or by leaving copies thereof at his residence in Surrency, Georgia, with some person of suitable age and discretion then residing therein.

35.

Defendant Lorne Andreae ("Defendant Andreae") was at all times relevant to this Complaint a paramedic with the Pierce County Emergency Medical Services and is named as a Defendant individually and in his official capacity for the Pierce County Emergency Medical Services.

36.

Defendant Andreae is subject to the jurisdiction and venue of this Court and may be served by delivering a copy of the Summons and Complaint to him personally or by leaving copies thereof at his residence in Waycross, Georgia, with some person of suitable age and discretion then residing therein.

37.

Defendants John Does 1-10 were at all times relevant to this Complaint employed by the City of Blackshear or the Blackshear Police Department or Pierce County or Pierce County Sheriff's Department or Pierce County Emergency Medical Services and are named as Defendants individually and in their official capacities for their respective department. Plaintiff will amend this Complaint at such time these individuals are identified.

## III. FACTS

38.

On November 30, 2007, the Decedent was stopped by Defendant Gregory K. Evans of the Blackshear Police Department "to speak with him about a warrant on him for his arrest." There are no other facts or circumstances articulated by Defendant Evans as to why he stopped the Decedent.

39.

When Defendant Evans stopped the Decedent, Defendant Evans was in his patrol car, knew the Decedent's name and did not verify via his police radio the existence or the non-existence of a pending arrest warrant for the Decedent. In fact, there was no pending arrest warrant for the Decedent as Defendant Evans was told when Defendant John Ramsey Bennett of the Pierce County Sheriff's Department arrived at the scene. Defendant Bennett's report notes that he informed Defendant Evans that Decedent "had already been arrested on those charges and was charged as a juvenile and released."

40.

When Defendant Evans approached the Decedent, according to Defendant Evans' report, the Decedent "began to run on foot" and Defendant Evans "grabbed him by the shirt to prevent his flight." Defendant Evans observed Decedent "trying to hide and discard something," "kept his hand in front of him at his waist," "appeared to be taking something out of the waist area of his pants," "orange pill bottle then dropped from his waist open and empty," "along with a white cap," and "placed his hand up to his mouth approximately three times."

41.

Defendant Evans suspected that the Decedent had swallowed drugs based on his observations

of drugs found at the scene and evidenced by his questions to Decedent on two separate occasions,
"did [you] swallow any substance."

42.

Defendant Christopher Carter of the Blackshear Police Department and Defendant Bennett
of the Pierce County Sheriff's Office both arrived at the location of the stop made by Defendant
Evans. Defendant Evans informed Defendants Carter and Bennett of Decedent's actions and all
three Defendants searched for drugs. Defendant Carter found "a small white block substance."
Defendant Bennett "tested a piece of the block substance and it tested positive for cocaine by turning
blue in a test kit." Knowing the actions of the Decedent and that the Decedent smelled of alcohol,
a deadly mix, Defendants Evans, Carter, and Bennett did not take Decedent to the Emergency Room.

43.

Defendant Evans proceeded to arrest Decedent and transported him to the Pierce County
Sheriff's Department for Possession of Cocaine and Obstruction of Officer. The booking checklist
notes that Decedent had an "alcohol smell & uncooperative."

44.

Defendant Raymond Lee Hunt of the Pierce County Sheriff's Department, a jailer at the
Pierce County Jail noted that the Decedent "smelled of alcohol but was cooperative while he was
being processed" into the Pierce County Jail. Defendant Hunt notes that Defendant Evans asked the
Decedent "if he had swallowed any cocaine." Defendant Hunt notes that the Decedent responded
no, but after being fingerprinted, the Decedent "asked for some water because his mouth was dry"
and became uncooperative. Defendant Evans and Hunt failed to transport Decedent to the Hospital
Emergency Room, while both knew of the cocaine and alcohol mix.

45.

On December 1, 2005, Defendant Hunt went to the cell where the Decedent had been placed due to another detainee, John Myles, "kicking on the door and screaming." The Decedent's cellmate was attempting to get the Jail Staff's attention due to witnessing the Decedent's first seizure. Defendant Hunt was told by John Myles that the Decedent "had been shaking badly." Defendant Hunt observed droll on the Decedent's mouth. Defendant Hunt requested Pierce County Emergency Medical Services. Defendant Hunt allowed Defendant Evans to accompany Defendant David Farrior to the cell with the Decedent. Defendant Hunt failed to request that the Decedent be transported to the Hospital Emergency Room based on the witness statements and the observations made by Defendant Hunt and Decedent's cellmate.

46.

Defendant David Farrior, paramedic with the Pierce County Emergency Medical Services responded alone to the Pierce County Jail on December 1, 2005 at approximately 2:12am. Defendant Hunt notes that the Decedent told Defendant Farrior that he did not feel good. Defendant Evans told Defendant Farrior "there ain't nothing wrong with him, they all act like that when they get locked up." Defendant Farrior briefly examined the Decedent and Defendants Farrior, Evans and Hunt left Decedent in the cell. Defendant Farrior departed the Jail at 2:25am. Defendant Evans' report stated that a blood kit was not taken on the Decedent " because he was alert and normal acting upon being arrested and he stated he did not swallow any of the substance found at the scene of the arrest." Defendants Hunt and Farrior allowed Defendant Evans to interfere in the Pierce County Jail with a medical examination of the Decedent. Defendants Hunt, Farrior and Evans failed to consider the totality of the circumstances and realize that the Decedent had a seizure, which was realized by

Decedent's cellmate. Defendant Farrior, with medical training, should have taken into account all the circumstances, including the witness observations from Defendant Hunt and Decedent's cellmate, and concluded that Decedent had a seizure. Defendants Hunt, Farrior and Evans failed to transport Decedent to the Hospital Emergency Room. Additionally, Defendant Farrior acted improperly by responding alone, as the sole medic and driver.

47.

On December 1, 2005 at 2:52 a.m., Defendant Van checked the Decedent and found him being held by his cellmate, since he was "jerking and hitting his head on the floor." Defendant Van made a request for Pierce County Emergency Medical Services. The Decedent had a second seizure. At 2:57a.m., Defendant Farrior arrived at the Jail and was the only paramedic to go to the Decedent's cell with two jailers, Defendants Van and Hunt. Defendant Farrior found the Decedent unresponsive, pulseless and apneic. Defendant Farrior left Decedent and went outside to get the other two EMTs and a stretcher. CPR was performed on the Decedent in the back of the ambulance. Defendant Farrior, again, responded to the call improperly by responding to Decedent's cell as the only paramedic and responding without any equipment. Defendant Farrior improperly left Decedent at an extremely critical time without medical attention. Defendant Hunt's report notes that Defendant Farrior left Decedent alone, while Defendant Farrior's report does not so indicate. The affidavit of Michael A. Wolfson, M.D., M.P.H., M.S. is attached as Exhibit A and is hereby incorporated by reference as if fully set forth herein. This affidavit explains the factually basis for the medical negligence of Defendant Farrior.

48.

The Decedent was transported and arrived at 3:20a.m at the Emergency Room of Satilla

Page 14 of 30

Regional Medical Center. Decedent endured pain and suffering as evidenced by his two seizures in the jail and decedent's ability to sit up on the stretcher in the emergency room at Satilla Regional Medical Center.

49.

Decedent remained on life support at Satilla Regional Medical Center and was placed at the Jesup Healthcare Center. Decedent never regained consciousness, thus he never recovered from the seizures and cardiac arrest. On January 22, 2006, Decedent died at the age of seventeen.

50.

Plaintiff filed a Notice of Claim on April 15, 2006 pursuant to Georgia Law. There was no response.

## *RELIEF SOUGHT*

## IV. <u>42 U.S.C. § 1983 CLAIMS</u>

51.

Plaintiff hereby incorporates by reference paragraphs 1-50 as if fully set forth herein.

52.

All of the Defendants, while acting under color of state law, deprived the Decedent of his Constitutionally-protected right to due process protected by the Fifth and Fourteenth Amendment of the United States Constitution.

53.

All of the Defendants, while acting under color of state law, deprived the Decedent of his

Constitutionally-protected right to be free from unreasonable seizures of his person and effects protected by the Fourth and Fourteenth Amendments of the United States Constitution.

54.

All of the Defendants while acting under color of state law, deprived the Decedent of his Constitutionally-protected right to be free from cruel and unusual punishment, as protected by the Fifth and Fourteenth Amendments of the United States Constitution.

### A. Wrongful & Excessive Detention

55.

Plaintiff hereby incorporates by reference paragraphs 1-54 as if fully set forth herein.

56.

Defendants Evans, Carter and Bennett, while acting under color of state law, violated Decedent's right to due process protected by the United States Constitution, when these Defendants intentionally, knowingly, recklessly, negligently, and with deliberate indifference, detained and arrested the Decedent, without probable cause and without a pending warrant, in direct violation of state and federal law, and incarcerated the Decedent in the Pierce County Jail on November 30, 2005.

57.

Defendants Evans, Carter, Bennett, and John Does 1-10, while acting under color of state law, violated Decedent's right to be free from unreasonable seizures of his person and effects, protected by the United States Constitution, when these Defendants intentionally, knowingly, recklessly, negligently, and with deliberate indifference, detained and arrested the Decedent, without probable cause and without a pending warrant, in direct violation of state and federal law, and

incarcerated the Decedent in the Pierce County Jail on November 30, 2005.

58.

Defendants Evans, Carter, Bennett, Hunt, Van and John Does 1-10, while acting under color of state law, violated Decedent's right to due process and right to be free from cruel and unusual punishment protected by the United States Constitution, and with deliberate indifference, incarcerated the Decedent in the Pierce County Jail without timely obtaining medical screening and treatment on November 30, 2005 and December 1, 2005.

59.

Defendants City of Blackshear, Blackshear Police Department, Mock, and Smiley, while acting under color of state law and pursuant to official City of Blackshear policy, practice or custom, intentionally, knowingly, recklessly, negligently, and with deliberate indifference, failed to instruct, train, discipline, supervise or control Defendants Evans and Carter in the correct and proper police procedures designed to ensure the protection of the Decedent's right to due process, right to be free from unreasonable seizures of his person and effects, right to be free from cruel and unusual punishment and the right to obtain proper medical screening and treatment.

60.

Defendants City of Blackshear, Blackshear Police Department, Mock and Smiley, while acting under color of state law and pursuant to official City of Blackshear policy, practice or custom, intentionally, knowingly, recklessly, negligently, and with deliberate indifference, approved, ratified the violations of the Decedent's civil rights perpetrated by Defendants Evans and Carter.

61.

Defendants Pierce County, Pierce County Sheriff's Department, and King, while acting under

color of state law and pursuant to official Pierce County policy, practice or custom, intentionally, knowingly, recklessly, negligently, and with deliberate indifference, failed to instruct, train, discipline, supervise or control Defendants Bennett, Hunt, Van and John Does 1-10 in the correct and proper police and jail procedures designed to ensure protection of the Decedent's right to due process, right to be free from unreasonable seizures of his person and effects, right to be free from cruel and unusual punishment, right to receive proper and timely medical screening and treatment.

62.

Defendants Pierce County, Pierce County Sheriff's Department, and King, while acting under color of state law and pursuant to official Pierce County policy, practice or custom, intentionally, knowingly, recklessly, negligently, and with deliberate indifference, approved, ratified the violations of the Decedent's civil rights perpetrated by Defendants Bennett, Hunt, Van and John Does 1-10.

## B. Denial of Essential Medical Care

63.

Plaintiff hereby incorporates by reference paragraphs 1-62 as if fully set forth herein.

64.

Defendants Evans, Carter, Bennett, Hunt, Van, Farrior, Kent, Davis, and John Does 1-10 violated Decedent's right to due process and right to be free from cruel and unusual punishment protected by the U.S. Constitution when these Defendants intentionally, knowingly, recklessly, negligently, and with deliberate indifference to Decedent's serious medical needs, ignored, refused, interfered with and denied the Decedent immediate emergency medical attention on November 30, 2005 and December 1, 2005.

65.

Defendants City of Blackshear, Mock, Smiley, Pierce County, King, Pierce County Emergency Medical Services, and Justice, acting under color of state law and pursuant to official City of Blackshear and Pierce County policy, practice or custom, intentionally, knowingly, recklessly, negligently, and with deliberate indifference, approved, ratified, or otherwise failed to remedy the violations of Decedent's civil right perpetrated by Defendants Evans, Carter, Bennett, Hunt, Van, Farrior, Kent, Davis, and John Does 1-10.

## C. Injuries & Damages

66.

Plaintiff hereby incorporates by reference paragraphs 1-65 as if fully set forth herein.

67.

As a direct an proximate result of all of the Defendants' conduct, Decedent Antonio Presley died. Decedent and Plaintiff have suffered extreme pain, both physical and mental.

68.

Plaintiff is entitled to recover compensatory damages for the physical and mental suffering by Decedent and Plaintiff that was endured in an amount as will fairly compensate Plaintiff.

69.

Plaintiff is entitled to recover compensatory damages for Decedent's lifetime earnings, earning capacity, the monetary value of his services as an adult, loss of Social Security pension, retirement, other benefits or receipts of like nature, loss of the enjoyment of life, medical expenses incurred as a result of this incident and any and all other damages that Plaintiff is entitled to recover.

70.

Plaintiff is also entitled to recover damages for the violation of Decedent's rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States through 42 U.S.C. § 1983.

71.

The Defendants' conduct exhibited a conscious disregard for the Constitutional rights of the Decedent and the consequences of such violation, which resulted in Decedent's death. As a result, the jury should assess punitive damages against the Defendants jointly and severally in order to punish them for their actions and in order to deter them from this type of conduct in the future.

72.

Plaintiff is further entitled to attorney's fees as authorized by 42 U.S.C. § 1988.

## V. **MEDICAL MALPRACTICE**

73.

Plaintiff hereby incorporates by reference paragraphs 1-72 as if fully set forth herein.

74.

Defendant Paramedic David Farrior responded to the Pierce County Jail alone at 2:13 am on December 1, 2005. Defendant Farrior responded alone in violation of accepted standards of care, in violation of Georgia ambulance rules and regulations, and as addressed in the Pierce County EMT Personnel Manuel.

75.

Defendant Farrior had a responsibility, under accepted standards of care, to obtain Decedent's history, if not volunteered, regarding the Decedent's arrest and ingestion of cocaine. The information readily available to Defendant Farrior was Defendant Hunt's observations of Decedent, with glassy eyes, mouth foam, and lying on the floor; and Decedent cellmate's observations of convulsions and shaking, including swallowing something.

76.

Defendant Farrior had a responsibility, under accepted standards of care, to not allow a by-stander, namely Defendant Evans, from interfering with his medical evaluation of Decedent.

77.

Defendant Farrior should have been aware that the Decedent's increased blood pressure and heart rate, especially in a 17 year-old, required immediate transport to the hospital. Defendant Farrior failed to take the Decedent's temperature at any time. Defendant Farrior failed to treat Decedent as an individual who had likely suffered a seizure and failed to take action to transport him to the nearest emergency room.

78.

Defendant Farrior left the Pierce County Jail 12 minutes after he arrived at Decedent's cell, after Decedent's first seizure. Defendant Farrior arrived the second time, after the second seizure, and found the Decedent unresponsive. Defendant Farrior, during the second call, responded to the Decedent alone, leaving two other medics outside. Defendant Farrior left the Decedent alone, without treatment, to get the other medics and a stretcher, in violation of accepted standards of care.

79.

A seizure and ingestion of cocaine are medical conditions that require both prompt medical attention and subsequent monitoring by medical personnel.

80.

The Decedent lost vital signs and had a cardiac arrest. The Decedent was presented to the hospital emergency room in a state of unconsciousness. Defendant Farrior failed to properly evaluate, treat and transport Decedent, which resulted in the Decedent's cardiac arrest and his ultimate death.

81.

The Decedent's death was proximately caused by the medical negligence of Defendant Farrior for which Defendant Justice and Defendant Pierce County are vicariously liable.

82.

Pursuant to O.C.G.A. § 9-11-9.1, Plaintiff attaches the affidavit of Michael A. Wolfson, M.D., M.P.H., M.S., as Exhibit A and said affidavit is hereby incorporated by reference as if fully set forth herein. The affidavit sets forth at least one act or omission related to the care and treatment of Decedent by Defendant Farrior, which said act proximately caused or contributed to Decedent's death and which said act illustrates Defendant Farrior failed to furnish that degree of skill and care required of the emergency medical profession in general.

83.

Defendant Farrior's negligence directly and substantially caused and contributed to the death of the Decedent.

84.

Defendant Justice is vicariously liable for the negligence of Defendant Farrior since Defendant Farrior was an employee acting within the course and scope of his employment while providing medical services to Decedent. Defendant Justice failed to properly train and supervise Defendant Farrior.

85.

Defendant Pierce County is vicariously liable for the negligence of Defendants Farrior and Justice since Defendants Farrior and Justice were employees acting within the course and scope of their employment while providing medical services to Decedent. Defendant Justice, as the emergency medical director, failed to properly train and supervise Defendant Farrior.

86.

As a direct and proximate result of the negligence of Defendants Farrior, Justice and Pierce County, the Decedent lost his life. The Defendants are joint tortfeasors and jointly and severally liable for the death of Decedent.

87.

As a result of the negligence of Defendants Farrior, Justice and Pierce County the decedent endured pain and suffering as evidenced by Decedent's ability to sit up on the stretcher in the emergency room at Satilla Regional Medical Center. The Defendants are jointly and severally liable for the pain and suffering of the Decedent.

88.

Plaintiff is entitled to recover damages from Defendants for their medical malpractice as entitled by law, in excess of $10,000.00 and all costs of court.

## VI. NEGLIGENCE

### 89.

Plaintiff hereby incorporates by reference paragraphs 1-88 as if fully set forth herein.

### 90.

City of Blackshear Defendants were given written notice of the herein described claim within the six (6) month period prescribed by O.C.G.A. § 36-33-5.

### 91.

Pierce County Defendants were given written notice of the herein described claim within the twelve (12) month period prescribed by O.C.G.A. § 36-11-1.

### 92.

Defendant City of Blackshear had purchased and was insured under a policy or policies of liability insurance which covers the claims described herein.

### 93.

Defendant Pierce County had purchased and was insured under a policy or policies of liability insurance which covers the claims described herein.

### 94.

Defendants Mock, Smiley, Evans, Carter, and John Does 1-10 were employed by Defendant City of Blackshear and Blackshear Police Department at all times herein and under the doctrine of *respondeat superior*, Defendants City of Blackshear and the Blackshear Police Department are liable for the negligence of Defendants Mock, Smiley, Evans, Carter, and John Does 1-10 committed within the course and scope of their employment.

95.

Defendants King, Bennett, Hunt, Van, Justice, Farrior, Kent, Davis and John Does 1-10 were employed by Defendants Pierce County, Pierce County Sheriff's Department, Pierce County Emergency Medical Services at all times herein and under the doctrine of *respondeat superior*, Defendants, Pierce County, Pierce County Sheriff's Department, Pierce County Emergency Medical Services are liable for any negligent conduct of Defendants King, Bennett, Hunt, Van, Justice, Farrior, Kent, Davis and John Does 1-10 committed within the course and scope of their employment.

96.

Defendants Evans, Carter, Bennett, Hunt, Van and John Does 1-10, jointly and severally, were under a legal duty and obligation not to unnecessarily detain Decedent.

97.

Defendants Evans, Carter, Bennett, Hunt, Van and John Does 1-10, jointly and severally, breached their duty not to unnecessarily detain the Decedent.

98.

All Defendants, jointly and severally, were under a legal duty and obligation to provide the Decedent with timely access to emergency medical screening, attention and proper care.

99.

The negligence of all the Defendants jointly and severally proximately caused injury and death to the Decedent. Decedent suffered extreme physical and mental pain from this incident. Plaintiff has suffered extreme mental pain from this incident. In addition, Plaintiff continues to suffer emotional pain.

100.

Plaintiff is entitled to recover from Defendants for Decedent's mental and physical pain and suffering, lifetime earnings, earning capacity, the monetary value of his services as an adult, loss of Social Security pension, retirement, other benefits or receipts of like nature, loss of the enjoyment of life, medical expenses incurred as a result of this incident and any and all other general and special damages to which Plaintiff is entitled by law.

101.

The Defendant's conduct exhibited a conscious disregard of the consequences which resulted to the Decedent. Consequently, the jury should assess punitive damages against the Defendants jointly and severally in order to punish them for their actions and in order to deter them from this type of conduct in the future.

## VII.  FALSE IMPRISONMENT

102.

Plaintiff hereby incorporates by reference paragraphs 1-101 as if fully set forth herein.

103.

Defendants' wrongfully stopped the Decedent without confirming the existence of a warrant and without probable cause, incarceration of Decedent constituted false imprisonment.

104.

As a direct and proximate result of the above Defendants' wrongful imprisonment of the Decedent, the Decedent lost his life and Plaintiff suffered extreme emotional pain. In addition, the wrongful imprisonment of the Decedent subjected the Decedent to confinement that prevented him

from obtaining necessary emergency medical care, which caused him to lose his life.

105.

Plaintiff is entitled to recover from Defendants for Decedent's mental and physical pain and suffering, lifetime earnings, earning capacity, the monetary value of his services as an adult, loss of Social Security pension, retirement, other benefits or receipts of like nature, loss of the enjoyment of life, medical expenses incurred as a result of this incident and any and all other general and special damages to which Plaintiff is entitled by law.

106.

The Defendants' conduct exhibited a conscious disregard of the consequences which resulted to the Decedent. Consequently, the jury should assess punitive damages against the Defendants jointly and severally in order to punish them for their actions and in order to deter them from this type of conduct in the future.

## VIII. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

107.

Plaintiff hereby incorporates by reference paragraphs 1-106 as if fully set forth herein.

108.

Defendants' wrongful detention of the Decedent in the Pierce County Jail was in reckless disregard of his physical well-being. The intentional acts of the Defendants were unconscionable, frightening, and sufficient to inflict emotional distress upon the Decedent, for which he is entitled to damages which will fully compensate the Plaintiff for his death.

109.

All Defendants failed to render essential and timely emergency medical care to the Decedent was in reckless disregard of his physical and emotional well-being.  The intentional acts of the Defendants were unconscionable, frightening, and sufficient to inflict emotional distress upon the Decedent, for which the Plaintiff is entitled to damages which will fully compensate for suffering and loss of life.

110.

The conduct of all of the Defendants constituted a conscious disregard for the consequences which resulted to the Decedent.  Consequently, the jury should be able to assess punitive damages against these Defendants jointly and severally in order to punish them for thir actions and in order to deter them from this type of conduct in the future.

## IX.  CLAIM FOR MEDICAL EXPENSES PURSUANT TO O.C.G.A. § 42-5-2

111.

Plaintiff hereby incorporates by reference paragraphs 1-110 as if fully set forth herein.

112.

Decedent was in the custody of the City of Blackshear, Blackshear Police Department, Pierce County, Pierce County Sheriff's Department and the Pierce County Emergency Medical Services at the time the Decedent sustained the injuries described herein.

113.

Pursuant to O.C.G.A. § 42-5-2, Defendants City of Blackshear, Blackshear Police Department, Pierce County, Pierce County Sheriff's Department and the Pierce County Emergency Medical Services are responsible for medical expenses incurred by the Decedent and Plaintiff as a result of the injuries and Decedent's death.

**WHEREFORE, Plaintiff respectfully demands:**

a) That process be issued and that the Defendants be served with process;

b) That judgment be entered in her favor, and against all the Defendants jointly and severally for the damages as shown at trial in the form of:

    1) Special damages for medical expenses;

    2) Special damages for funeral expenses;

    3) General damages for Decedent's mental and physical pain and suffering, lifetime earnings, earning capacity, the monetary value of his services as an adult, loss of Social Security pension, retirement, other benefits or receipts of like nature, loss of the enjoyment of life that will adequately compensate the Plaintiff;

    4) General damages for Plaintiff's loss of her son, loss of the enjoyment of life with her son that will adequately compensate the Plaintiff;

    5) Punitive damages against the Defendants in such amount that will punish them and deter them from this type of conduct in the future;

6)      For medical malpractice, damages in excess of $10,000.00;

7)      That all attorney's fees, costs and expenses of litigation be cast upon the

Defendants;

8)      All other and further relief as this Court shall deem just and proper; and

9)      That all triable issues be submitted to a jury.

This **13ᵗʰ** day of **November**, 2007.


Respectfully submitted,

LAW OFFICE OF CLYDE W. ROYALS

By:_____

CLYDE W. ROYALS
Georgia State Bar No. 617690


By:_____

KATHY R. GRIFFIN
Georgia State Bar No. 599325

612 Tebeau Street
Waycross, GA 31501
Telephone: 912-285-5011
Facsimile: 912-285-5026

## VERIFICATION AND CONSENT TO BRING SUIT

Personally appeared before the undersigned attesting officer authorized to administer oathe, BRENDA PRESLEY, Individually and as Administratrix of Estate of Antonio Presley, who, after being duly sworn, deposes and says on oath that he facts contained in the foregoing Complaint for violation of the civil rights and all other theories as are advanced therein based upon the facts asserted, are true and correct to the best of her knowledge, and that she hereby consents to the filing of said Complaint on her behalf individually and as Administratrix of Estate of Antonio Presley.

BRENDA PRESLEY

Sworn to and subscribed
before me this  8th  day
of  November , 2007.

NOTARY PUBLIC

MY COMMISSION EXPIRES:

LISA M. McCOLLUM
Notary Public, Ware County, GA
My Commission Expires September 10, 2010