# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | |
|---|---|
| BRENDA PRESLEY, Individually, and as the Administratrix of the Estate of Antonio Presley, decedent,<br><br>     Plaintiff,<br><br>          v.<br><br>CITY OF BLACKSHEAR, BLACKSHEAR POLICE DEPARTMENT, FORMER CHIEF OF POLICE JAMES MOCK, Individually and in his Official Capacity as the former Chief of Police of the City of Blackshear, LT. GEORGE SMILEY, Individually and in his Official Capacity for the Blackshear Police Department, OFFICER GREGORY K. EVANS, Individually and in his Official Capacity for the Blackshear Police Department, OFFICER CHRISTOPHER W. CARTER, Individually and in his Official Capacity for the Blackshear Police Department, PIERCE COUNTY, PIERCE COUNTY SHERIFF'S DEPARTMENT, SHERIFF RICHARD KING, Individually and in his Official Capacity as Sheriff of Pierce County Sheriff's Department, DET. JOHN RAMSEY BENNETT, Individually and in his Official Capacity for the Pierce County Sheriff's Department, RAYMOND LEE HUNT, Individually and in his | CIVIL ACTION |

Official Capacity for the          :
Pierce County Jail, Pierce
County Sheriff's Department,       :
DAPHNE G. VAN, Individually
and in her Official Capacity       :
for the Pierce County Jail,
Pierce County Sheriff's            :
Department, PIERCE COUNTY
EMERGENCY MEDICAL SERVICES,        :
DIRECTOR KENNETH L. JUSTICE OF
THE PIERCE COUNTY EMERGENCY        :
MEDICAL DEPARTMENT,
Individually and in his            :
Official Capacity as the
Director of the of the Pierce      :
County Emergency Medical
Services, PARAMEDIC DAVID          :
FARRIOR, Individually and in
his Official Capacity for the      :
Pierce County Emergency
Medical Services, PARAMEDIC        :
ALFRED KENT DAVIS,
Individually and in his            :
Official Capacity for the
Pierce County Emergency            :
Medical Services, EMT-
INTERMEDIATE LORNE ANDREAE,        :
Individually and in her
Official Capacity for the          :
Pierce County Emergency            :
Medical Services, JOHN DOES 1
- 10, Individually and in the      :
Official Capacities for City
of Blackshear, Blackshear          :
Police Department, Pierce
County, Pierce County              :
Sheriff's Department, Pierce
County Emergency Medical           :
Services,
                                   :
     Defendants.                          NO.  CV507-094

                          2

## ORDER

Plaintiff Brenda Presley, individually and as the Administratrix of the Estate of Antonio Presley, Decedent, filed the above-captioned case against Defendants, asserting claims for denial of essential medical care, under 42 U.S.C. § 1983, and state-law claims for medical malpractice and negligence.

Presently before the Court is Defendants' motion for summary judgment. For the reasons set forth below, Defendants' motion will be **GRANTED**.

## BACKGROUND

### I. **The Parties**

Plaintiff is a resident of Blackshear in Pierce County Georgia. She is the Decedent's mother and the administratrix of Decedent's estate.

Defendant City of Blackshear is a political subdivision of the State of Georgia located in Pierce County, Georgia. Defendant Blackshear Police Department is an entity of the City of Blackshear. Defendant James Mock was at all times relevant to this case the Chief of Police for the City of

Blackshear.  Defendant George Smiley was at all times relevant to this case a Lieutenant with the Blackshear Police Department and was the head of the Department's Patrol and Training Division.  Defendants Gregory Evans and Christopher Carter were at all times relevant to this case police officers with the Blackshear Police Department.

Defendant Pierce County is a political subdivision of the State of Georgia.  Defendant Pierce County Sheriff's Department is an entity of Pierce County.  Defendant Richard King was at all times relevant to this case the Sheriff of Pierce County.  Defendant John Ramsey Bennett was at all times relevant to this case an employee of Sheriff King.[1] Defendants Raymond Lee Hunt and Daphne G. Van were at all times relevant to this case jailers at the Pierce County jail.

Defendant Pierce County Emergency Medical Services ("Pierce County EMS") is a recognized legal entity located in Pierce County, Georgia.  Defendant Kenneth L. Justice was at all times relevant to this case the department head in charge

---

[1]In her complaint, Plaintiff asserts that Defendant Bennett was at all times relevant to this case employed by the Pierce County Sheriff's Department as a detective/investigator.  Complaint ¶ 20.  In their answer, Defendants deny this allegation, but admit that Bennett was "an employee of Sheriff King."  Answer by Pierce County Defendants ¶ 20.

of Pierce County EMS.[2]  Defendants David Farrior and Alfred Kent Davis were at all times relevant to this case paramedics with Pierce County EMS.  Defendant Lorne Andreae was at all times relevant to this case either a paramedic or an emergency medical technician with Pierce County EMS.[3]

Defendants John Does 1-10 were at all times relevant to this case employed by the City of Blackshear, the Blackshear Police Department, Pierce County, the Pierce County Sheriff's Department, or Pierce County EMS.

## II.  **Decedent's Detention and Death**

The evidence shows that, on November 30, 2005, Decedent was stopped by Defendant Evans, an officer with the Blackshear Police Department, as he walked down Youmans Street in Blackshear, Georgia.  Defendants' Statement of Undisputed

---

[2]Plaintiff asserts that Defendant Justice is the Director of Pierce County EMS.  Complaint ¶ 28.  Defendants deny this, but admit that Defendant Justice is the "department head in charge" of Pierce County EMS, but that "the County Commission retains the authority to review his decisions."  Answer by Pierce County Defendants ¶ 26.  Defendants also admit that Defendant Justice is responsible for "hiring, training, supervision, termination, and conduct of persons employed by" Pierce County EMS, "though his role remains subject to review by the County Commission."  Answer by Pierce County Defendants ¶ 29.

[3]Plaintiff asserts that Defendant Andreae is a paramedic with Pierce County EMS.  Complaint ¶ 35.  Defendants deny this, however, and assert that Andreae is instead an emergency medical technician.  Answer by Pierce County Defendants ¶ 35.

Material Facts ¶¶ 3, 5. According to Officer Evans, he initially stopped Decedent to investigate a warrant which he believed to be still active, related to a prior Georgia Bureau of Investigation drug roundup. Id. ¶ 6. However, Defendants admit that, at the time of the stop--and, according to Defendants, unbeknownst to Officer Evans--there was no arrest warrant pending for Decedent. Answer by City of Blackshear Defendants ¶ 16.

According to Officer Evans, upon exiting his patrol car to speak with Decedent, Decedent began to run. Defendants' Statement of Facts ¶ 8. When Decedent started to run, Officer Evans grabbed him by the shirt to prevent his flight. A struggle then ensued between Decedent and Officer Evans. Id. In his incident report, Officer Evans states that, during this struggle, he observed Decedent "trying to hide and discard something" and that Decedent "kept his hands in front of him at his waist" and "appeared to be taking something out of the waist area of his pants." Gregory K. Evans Incident Report at 1, Exhibit "A" to Defendants' Motion for Summary Judgment. Officer Evans' report also indicates that, after an empty orange pill bottle dropped from Decedent's front waist, Decedent "placed his left hand up to his mouth approximately

three times." Id. Officer Evans admits that, based on his observations, it appeared to him as though Decedent had swallowed something, and that it was probably some sort of drugs. Answer by City of Blackshear Defendants ¶ 18. However, Evans testified in his deposition that he did not observe Decedent actually putting anything into his mouth. Gregory Evans Dep. 26. According to Evans, he asked Decedent several times if he had swallowed anything, and Decedent repeatedly denied that he had. Evans Dep. 18, 20, 25.

Defendant Carter, another officer with the Blackshear Police Department, and Defendant Bennett, of the Pierce County Sheriff's Office, both arrived at the location of the stop in order to assist Officer Evans. Complaint ¶ 42; Chris Carter Incident Report at 3, Exhibit "A" to Defendants' Motion for Summary Judgment; Ramsey Bennett Incident Report at 3, Exhibit "B" to Defendants' Motion for Summary Judgment.

Officer Evans informed Carter and Bennett of what had happened, and asked them to assist him in looking for a substance that Decedent had discarded during the struggle. Evans Incident Report at 1. Upon searching the area, Officer Carter found what appeared to be a small block of crack cocaine. Carter Incident Report at 3. Bennett then tested

the substance and it tested positive for cocaine. Bennett Incident Report at 3. Ultimately, Officer Evans arrested Decedent and charged him with obstruction of a law enforcement officer and possession of crack cocaine. Defendants' Statement of Facts ¶ 11. Evans proceeded to transport Decedent to the Pierce County Jail. Id. ¶ 12. When Decedent arrived at the jail, he smelled of alcohol and, according to Defendant Hunt--a jailer at the Pierce County Jail--Decedent had "glassy eyes." Complaint ¶ 43; Defendants' Statement of Facts ¶ 47; Raymond Hunt Dep. 19. Decedent was placed in the jail's holding cell by Jailer Hunt. Defendants' Statement of Facts ¶ 48.

Early the next morning, December 1, at approximately 2:00 A.M. while doing rounds in the jail, Defendant Hunt heard another inmate, John Myles, yelling from the holding cell where Decedent was located. Id. ¶ 49. When he went to investigate, Hunt saw Decedent lying on the floor, asleep, with what appeared to Hunt to be drool coming out of the sides of Decedent's mouth. Hunt Dep. 16. Mr. Myles told Hunt that Decedent "had been shaking real badly" and had "hit his head on the floor." Id. 17. Because Decedent was unresponsive,

Hunt told a fellow jail employee to call EMS and Office Evans. Id.

In response to this request, Defendant Farrior, a paramedic with Pierce County EMS, arrived at the jail at 2:12 A.M. Complaint ¶ 46; David Farrior Transport Report at 1, Exhibit "C" to Defendants' Motion for Summary Judgment. Farrior first made contact with Decedent in his cell one minute later, at 2:13 A.M. Transport Report at 1. Although there were two other paramedics on duty at Pierce County EMS that morning, Farrior admits that he responded to the call alone. Farrior Dep. 20. According to Farrior's testimony, Officer Evans, who was in Decedent's cell with Farrior during Farrior's examination, did not tell Farrior of his suspicions that Decedent had ingested cocaine earlier in the evening. Id. at 14. Further, when Farrior asked Decedent whether he had ingested any drugs, Decedent responded that he had not. Id. at 18.

Mr. Myles, Decedent's cell-mate, told Farrior that he had witnessed Decedent "jerk" for approximately two seconds and that Decedent appeared to have "foam" coming from his mouth. Id. at 15-16. According to Farrior, when he asked Decedent whether he remembered this, Decedent responded that he did

9

not. Id. at 15. In his deposition, Farrior testified that he questioned Decedent about his medical history, and that Decedent denied having any history of seizures. Id. at 16.

According to Farrior, he then checked Decedent for any signs of a possible seizure. Id. at 18. This included a check of Decedent's vital signs, blood pressure, pulse, and oxygen saturation. Id. at 19. He also checked Decedent's mouth, "listened to his breath sounds, looked at his pupils, [and] checked his stomach." Id. Based on the results of his examination, Farrior concluded that Decedent had no "neurological deficits" normally associated with a seizure. Id. Farrior testified that based on the examination, as well as what Decedent told him, he had no reason to think there was anything to worry about. Id. at 20-21. Farrior concluded that Decedent required no further treatment and left the jail at 2:25 A.M., twelve minutes after first making contact with Decedent. Farrior Transport Report at 1.

Approximately thirty minutes later, at 2:52 A.M., Defendant Van, another jailer at the Pierce County Jail, was advised to check on Decedent in his cell. Defendants' Statement of Facts ¶ 56; Complaint ¶ 47. Upon her arrival, Van observed Mr. Myles holding Decedent's head up with a

blanket.  Id.  According to Van, Decedent's eyes appeared glassy, he was foaming at the mouth, and his heart was beating fast.  Daphne Van Incident Supplemental Report at 4, Exhibit "B" to Defendants' Motion for Summary Judgment.  Van also observed Decedent "jerking and hitting his head on the floor." Id. Mr. Myles advised Van that Decedent had told him that he had eaten a "handful of crack" just before Officer Evans arrested him.  Id. Van immediately made a request for Pierce County EMS.  Id.

In response to this second call, Defendant Farrior arrived at the jail at 2:57 A.M.[4]  Transport Report at 1. Upon arriving at Decedent's cell, Van told Farrior that, according to Myles, Decedent had ingested crack earlier in the evening.  Daphne Van Dep. 12.  According to the testimony of Defendant Davis, as he and Defendant Andreae arrived at the jail just minutes after Farrior arrived, Farrior met him in the hallway to Decedent's cell and advised him of the

---

[4]According to Farrior's testimony, he arrived at the jail before Defendants Davis and Andreae because he responded to the jail on foot, while Davis and Andreae arrived in an ambulance. Farrior Dep. 23-24.  Farrior testified that, due to the close proximity between the EMS' building and the jail--approximately 100 feet--a person can actually get to the jail faster than a crew can get there in an ambulance.  Id. at 37.  Plaintiff claims, however, that Farrior traveled to the jail on foot so that he could smoke a cigarette on the way.  Plaintiff's Brief at 16.

situation.  Alfred Davis Dep. 14.  Davis then provided Farrior

with a "jump bag" and went back to the ambulance with Andreae

to get a cardiac monitor, airway bag, and a stretcher.  Davis

Dep. 19-20.  According to Davis, Farrior immediately went back

to Decedent's cell and began treatment on Decedent.  Id.

Farrior testified that he began CPR and basic cardiac life

support ("BCLS") on Decedent while still in the holding cell.

Farrior Dep. 27.  Once Davis and Andreae arrived in the cell

with the stretcher, Decedent was moved to the ambulance.  Id.

The ambulance departed the jail at 3:10 A.M.  Transport Report

at 1.[5]

Defendants Farrior, Andreae and Davis continued to

perform life support efforts upon Decedent while in the

ambulance on the way to the Satilla Regional Medical Center in

Waycross, Georgia.   Farrior Dep. 25-32.   The ambulance

arrived at the hospital's Emergency Room at 3:20 A.M., ten

minutes after departing from the jail.  Transport Report at 1.

------------------------

[5]There are several inconsistencies in the testimony regarding
the paramedics' second visit to the jail.  For instance, while
Davis testified that, upon his arrival, Farrior met him in the
hallway and then immediately went back to Decedent's cell to
administer treatment after grabbing his "jump bag," Defendant Hunt
wrote in his incident report that Farrior "ran down the hallway and
out the front door" and that he "came right back in with a
stretcher and 2 other EMT'S."  Hunt Incident Report at 5.

Decedent remained on life support at Satilla Regional Medical Center and was then placed at the Jesup Healthcare Center. Complaint ¶ 49. According to Plaintiff, Decedent never regained consciousness and never recovered from the seizures and cardiac arrest. Id. He died on January 22, 2006. Id.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor." United States v. Four

<u>Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991)(en banc)(internal quotation marks omitted).


## <u>DISCUSSION</u>

In her complaint, Plaintiff asserted seven separate causes of action against seventeen separate Defendants. To complicate matters further, many of these Defendants were sued in both their official and individual capacities. The complaint alleged claims for wrongful and excessive detention, and denial of essential medical care under § 1983, as well as state-law claims for medical malpractice, negligence, false imprisonment, intentional infliction of emotional distress, and medical expenses.

In <u>Davis v. Coca-Cola Bottling Co. Consolidated</u>, 516 F.3d 955, 979-84 (11th Cir. 2008), the Eleventh Circuit imposed upon District Courts the responsibility to address thoroughly and methodically all facts, claims and defenses presented in connection with summary judgment motions in multiple claim, multiple party cases such as this. In order to fulfill this responsibility, the Court has encouraged Plaintiff to clearly and thoroughly set forth which causes of action are being asserted against which Defendants, and the allegations related

to each claim. At the Court's suggestion, Plaintiff has significantly limited the issues before the Court by consenting to summary judgment as to certain claims and as to certain Defendants.

In particular, Plaintiff has consented to summary judgment in favor of Defendants Pierce County, City of Blackshear, Mock, Smiley, Carter, Bennett, Hunt, Van, King, Justice, Pierce County EMS, Blackshear Police Department, Pierce County Sheriff's Department, Andreae, Davis, and John Does 1-10. See Plaintiff's Statement of Claims at 2. Doc. No. 110. Accordingly, the Court grants summary judgment in favor of those defendants. The only remaining Defendants, therefore, are Defendants Evans and Farrior.

Further, Plaintiff has abandoned her claims for wrongful and excessive detention, false imprisonment, intentional infliction of emotional distress, and medical expenses. Id. at 2-4. It should be noted that it was entirely appropriate for Plaintiff's attorney to abandon these claims. Even if Plaintiff had not consented to summary judgment on these claims, summary judgment would still have been appropriate. As to Plaintiff's claim for wrongful and excessive detention under the Fourth Amendment, the evidence shows that reasonable

articulable suspicion existed to justify the initial stop of Decedent. Further, once that stop was initiated, probable cause arose to justify Decedent's eventual arrest. Not only does the existence of probable cause defeat Plaintiff's claim for wrongful and excessive detention, but it also defeats Plaintiff's state-law claim for false imprisonment. See Mayor of Savannah v. Wilson, 447 S.E.2d 124, 127 (Ga. Ct. App. 1994) (holding that, to survive summary judgment on a false imprisonment claim, "[l]ack of probable cause . . . must be shown.").

As to Plaintiff's claim for intentional infliction of emotional distress, Plaintiff has failed to show that Defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Phinazee v. Interstate Nationalease, Inc., 514 S.E.2d 843, 845 (Ga. Ct. App. 1999) (quoting Bowers v. Estep, 420 S.E.2d 336, 339 (Ga. Ct. App. 1992)). Because "[w]hether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law," id., summary judgment would be proper on Plaintiff's

intentional infliction of emotional distress claim even if Plaintiff had not so consented.

Accordingly, the Court grants the Defendants' motion for summary judgment as to these claims. The only claims remaining are as follows: (1) a § 1983 claim for deliberate indifference to serious medical needs against both of the remaining Defendants; and (2) a state-law claim for negligence/medical malpractice against Defendant Farrior. Id.

## II.   **Denial of Essential Medical Care Claims**

Plaintiff claims that Defendants Evans and Farrior were deliberately indifferent to Decedent's serious medical needs, and denied Decedent immediate emergency medical attention, in violation of the Eighth and Fourteenth Amendments. Specifically, Plaintiff claims that Defendant Evans "deliberately refused to take any action to permit [Decedent] to have the medical care he required" and that these actions "were objectively unreasonable." Plaintiff's Statement of Claims at 3. Plaintiff alleges that Defendant Farrior "knew of and disregarded the substantial risk of serious harm to [Decedent]'s health and safety when he elected to leave [Decedent] unattended and in an unmonitored holding cell."

_Id._ at 4. Plaintiff alleges that these actions were also "objectively unreasonable." _Id._

Although, in her complaint, Plaintiff claimed that these alleged actions amounted to a violation of the Eighth Amendment, the Supreme Court has held that "[t]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." _Ingraham v. Wright_, 430 U.S. 651, 671 n.40 (1977). "Conditions of confinement imposed prior to conviction are limited instead by the due process clause of the fourteenth amendment." _Hamm v. DeKalb County_, 774 F.2d 1567, 1572 (11th Cir. 1985). Because the conditions about which Plaintiff complains in this case were imposed on Decedent before a conviction was had, the Court must evaluate these claims under the Fourteenth Amendment only. _Id._ However, because the legal standard under the Fourteenth Amendment's Due Process Clause is the same as that which applies to convicted persons under the Eighth Amendment, the analysis is the same regardless. _Id._ at 1574.

In _Farmer v. Brennan_, the United States Supreme Court held that, in order for a plaintiff to recover for deliberate

indifference to serious medical needs, the plaintiff must show that an official "acted or failed to act despite his knowledge of a substantial risk of serious harm." 511 U.S. 825, 842 (1994). In Carroll v. Correctional Medical Services, the Eleventh Circuit held that a constitutional violation is present only where the medical treatment received was "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.'" 160 Fed. App'x 848, 850 (11th Cir. 2005)(quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)).

The Court in Carroll went on to hold that "[a]n inmate who complains that [a] delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment to succeed." Id. (quoting Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002)). The Eleventh Circuit went on to state:

> "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." A plaintiff must first show

"an objectively serious medical need."  He must then "prove that the prison official acted with an attitude of deliberate indifference to that serious medical need."

Id. (internal citations omitted)(quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)).

Plaintiff has failed to raise a genuine issue of fact as to her deliberate indifference claims.  In Burnette v. Taylor, the Eleventh Circuit held that, in order to survive summary judgment on a claim of deliberate indifference to serious medical needs, the plaintiff "must establish for each Defendant that [the inmate]'s medical need was so obvious that a lay person––in that Defendant's place––would recognize the need for treatment."  533 F.3d 1325, 1330 (11th Cir. 2008). The court in Burnette went on to hold that "[n]o liability arises under the Constitution for an official's failure to alleviate a significant risk that he should have perceived but did not . . . . As such, imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.  Each individual Defendant must be judged separately and on the basis of what that person knows."  Id. at 1331 (internal citations omitted).

Like Plaintiff in this case, the plaintiff in Burnette claimed that jail officials were deliberately indifferent to

the serious medical needs of an inmate who died of a drug overdose while in police custody. Id. at 1327. Further, there was evidence in Burnette that the officers knew that the decedent had ingested drugs. First, the decedent's stepfather had specifically informed the defendants in Burnette, prior to the decedent being arrested, that the decedent was "strung out" on pills and other drugs. Id. at 1328. The decedent's stepfather also told the defendants that his trailer had been broken into and that he suspected the decedent had stolen drugs from him. Id. The stepfather told the defendants that the decedent had gone through drug treatment in the past, and that the treatment was unsuccessful. Id.

When the defendants in Burnette went to arrest the decedent, they observed that the decedent "had glassy eyes and dilated pupils." Id. Further, the arresting officers noted that the decedent's responses to questions were slow and that the decedent was in possession of a bottle of prescription pills when he was arrested. Id. In fact, the court in Burnette noted that "[i]t was apparent to [the arresting officer] that [the decedent] was under the influence of something." Id.

When the decedent in <u>Burnette</u> arrived at the jail, the jailer found another bottle of prescription pills in the decedent's underwear.  <u>Id.</u>  After the jailer observed the decedent staggering, he stated "you're almost wasted; ain't you?"  <u>Id.</u>  Another jailer on duty that night noticed that the decedent's speech was slurred.  <u>Id.</u> at 1329.  There was also evidence that the decedent was not able to walk on his own, and that the jailers on duty knew of this.  Id.

Based, in part, on the evidence outlined above indicating that the defendants were aware that the decedent was under the influence of drugs yet failed to provide the decedent with medical assistance, the district court denied summary judgment in <u>Burnette</u>.  The Eleventh Circuit reversed, ruling that summary judgment must be granted to all of the defendants.  <u>Id.</u> at 1333.  In reversing the denial summary judgment, the Eleventh Circuit in <u>Burnette</u> held that "[t]he Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol."  <u>Id.</u>

Like the plaintiff in <u>Burnette</u>, Plaintiff in this case has failed to present sufficient evidence to defeat summary judgment on her deliberate indifference claims.  As to

22

Defendant Evans, the evidence presented by Plaintiff, at best, shows that Evans should have known that Decedent may have ingested cocaine. The evidence shows that Evans observed Decedent put his hand to his mouth three times. Defendants have admitted that "it appeared to defendant Evans that [Decedent] had swallowed something, and that it was possibly some sort of drugs." Answer by City of Blackshear Defendants ¶ 18. However, Evans himself testified that he did not personally observe Decedent ingest any drugs. Evans Dep. 25-26. There is no evidence in the record suggesting that Evans actually saw Decedent swallow any drugs.

In any event, even if Plaintiff could prove that Evans had actual knowledge of Decedent's drug ingestion, Officer Evans would still be entitled to summary judgment based on the holding in <u>Burnette</u> that the Constitution does not require an officer to provide medical assistance to every arrestee who appears to be affected by drugs. 533 F.3d at 1333. In fact, the officers in <u>Burnette</u> had even more of a reason to know that the decedent in that case had ingested drugs, yet the court still found summary judgment to be appropriate. Based on this, Evans is entitled to summary judgment.

Defendant Farrior is also entitled to summary judgment on Plaintiff's deliberate indifference claim. The evidence in the record shows that Farrior promptly responded to both calls from the Pierce County Jail concerning Decedent that evening, and that, each time, he examined Decedent to determine whether further medical treatment was needed. Farrior Dep. 15-21; 25-30. Plaintiff has not presented any evidence to suggest that Farrior failed to respond to any of the calls regarding Decedent, or that he had any reason to know of Decedent's condition prior to receiving the first call from the jail.

At best, a reasonable jury could conclude, based on the evidence in the record, that Farrior failed to properly diagnose Decedent's condition during his first visit to the jail and that he was negligent in the way he treated Decedent on both visits. However, the Eleventh Circuit has made it clear that "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." Carroll, 160 Fed. App'x at 850 (emphasis added). Further, in Ryan v. Aina, the Eleventh Circuit held that "[a]n inmate's mere disagreement with the course of medical treatment does not amount to deliberate indifference." 222 Fed. App'x 801, 805-806 (11th Cir. 2006). There is no evidence in the record to

suggest that Farrior acted with deliberate indifference to a serious medical need. Therefore, Farrior is entitled to summary judgment.

Although the Court need not address Defendants' qualified immunity defense, the Court does note for the sake of thoroughness that, in <u>Burnette</u>, the Eleventh Circuit held that, even if it were mistaken on the appropriateness of summary judgment based on the merits of the plaintiff's claims, qualified immunity would apply. 533 F.3d at 1333 n.7. Similarly, even if Defendants Evans and Farrior had not been entitled to summary judgment on the merits of Plaintiff's deliberate indifference claims, they would be entitled to qualified immunity.

## III. <u>Plaintiff's State-Law Claims</u>

Remaining in this case are Plaintiff's state-law claims for negligence and medical malpractice against Defendant Farrior.

Farrior claims that he is statutorily immune from liability under Georgia law. The relevant Code Section provides:

> (a) Any person, including agents and employees, who is licensed to furnish ambulance service and who in

> good faith renders emergency care to a person who is
> a victim of an accident or emergency shall not be
> liable for any civil damages to such victim as a
> result of any act or omission by such person in
> rendering such emergency care to such victim.
>
> ...
>
> (c) The immunity provided in this Code section shall
> apply only to those persons who perform the
> aforesaid emergency services for no remuneration.

O.C.G.A. § 31-11-8. Unlike sovereign immunity, "a claim of immunity under [this Code Section] cannot be waived by those persons to whom the statute applies; and among those 'persons' to whom the statute applies are 'municipalities' and 'counties.'" Johnson v. Gwinnett County, 449 S.E.2d 856, 857 (Ga. Ct. App. 1994).

It is undisputed that, on the date in question, Farrior was an employee of Pierce County EMS, which was licensed to provide ambulance services by the Georgia Department of Human Resources. Kenneth L. Justice Aff. ¶ 6, Exhibit "F" to Defendants' Motion for Summary Judgment. Further, Plaintiff does not present any evidence suggesting that Defendants did not act in "good faith." Viewing the evidence in light most favorable to Plaintiff, the evidence shows, at best, that Defendants exercised bad judgment and acted negligently in caring for Decedent. However, Georgia courts have made clear

26

that this is not enough to show a lack of good faith for purposes of statutory immunity.  See, e.g., Thomas v. DeKalb County, 489 S.E.2d 58, 62 (Ga. Ct. App. 1997)("Even if the paramedics exercised bad judgment and acted negligently, such does not amount to a lack of good faith.").  See also Bixler v. Merritt, 534 S.E.2d 837, 839 (Ga. Ct. App. 2000). Therefore, under the statute, immunity attaches as long as the services in question were not for remuneration.  O.C.G.A. § 31-11-8(c);  See also Thomas, 489 S.E.2d at 61.

The Court rejects the Plaintiff's argument that the immunity statute does not apply because Decedent was to be charged for the ambulance services.  In his affidavit, Defendant Justice states that:

> Pierce County, Georgia, bills persons using a Pierce County EMS ambulance for two things: (a) a standard transportation fee; and (b) a mileage fee based upon the length of the transport.  The monies collected from transport fees and mileage fees do not cover the budget for the operation of Pierce County EMS. The fees are used solely to assist with defraying the administrative costs of operating Pierce County EMS.

Justice Aff. ¶ 7.  Plaintiff has failed to present any evidence to the contrary.

In Ramsey v. Forest Park, the Georgia Court of Appeals held that "a fee charged by a governmental organization to

assist in defraying the administrative costs of 'transporting a person to a hospital' is not the equivalent of receiving remuneration for providing stated 'emergency care,' within the meaning of O.C.G.A. § 31-11-8(c)." 418 S.E.2d 432, 434 (Ga. Ct. App. 1992). The court in <u>Ramsey</u> went on to hold that "[w]hat may constitute a remuneration to a private 'person' may not reward and constitute remuneration to a governmental organization having to control its public expenditures carefully while providing 'emergency medical services' to those within its boundaries." <u>Id.</u> The court in <u>Ramsey</u> concluded that immunity under Code Section 31-11-8 applied in that case despite the fact that, like here, the defendant charged a fee to defray the administrative costs of patient transportation. <u>Id.</u> Accordingly, the court in <u>Ramsey</u> affirmed the trial court's grant of summary judgment in favor of the defendant. <u>Id.</u>

As was the case in <u>Ramsey</u>, Georgia Code Section 31-11-8 applies to the facts of this case. Pursuant to that statute, Defendant Farrior is entitled statutory immunity, and therefore summary judgment, on Plaintiff's state-law claims.

**CONCLUSION**

For the above reasons, Defendant's motion for summary is **GRANTED**. Doc. No. 52.


**SO ORDERED** this __31st__ day of December, 2008.

_____
Judge, United States District Court
Southern District of Georgia